THE STATE EX REL. CHARLES E. WILLIAMS vs. PATRICK
KENNELLY.

Third Judicial District, Bridgeport, April Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The charter of the city of Bridgeport as amended in 1899 (13 Special
Laws, p. 376), provides that the director of public works shall be
appointed by the mayor for a term of four years, unless sooner re-
moved by him for cause. *Held* that in removing such officer the
mayor was exercising a power incident to executive discretion
rather than one of a *quasi*-judicial nature; and therefore it was
enough, certainly, to justify his action, that he had informed such
officer of charges against him which, if true, would furnish a proper
cause of removal, and after hearing his explanation had removed
him, assigning as a reason therefor the truth of such charges.
It is possible that such a removal may be unjust and induced by politi-
cal motives, as the relator contended was the fact in the present
case, but the removal is nevertheless valid if the executive acts
within the limits of his discretion. Under such circumstances his
official acts are not subject to reversal by the courts.

Argued April 16th—decided July 24th, 1903.

INFORMATION in the nature of *quo warranto*, brought to
and tried by the Superior Court (*Gager, J.*) in Fairfield
County ; demurrer to replication sustained and judgment
rendered for respondent, from which the relator appealed.
*No error.*

*Robert E. De Forest* and *William H. Comley*, for the ap-
pellant (plaintiff).

*Elmore S. Banks* and *William A. Redden*, for the appellee
(defendant).

HAMERSLEY, J.   This is an information in the nature of a
*quo warranto*, filed by the State's Attorney at the relation of
Charles E. Williams, charging the respondent, Patrick Ken-
nelly, with usurping the office of director of public works of
the city of Bridgeport.   The information alleges that the

mayor of Bridgeport, under and in pursuance of the charter of that city, on May 26th, 1900, appointed the relator director of public works for the term of four years from June 1st, 1900, that the relator duly qualified and entered upon the duties of the office, and that the respondent has since May 19th, 1902, illegally usurped and still continues to usurp said office.

The answer admits the appointment of the relator on May 26th, 1900, and that the respondent now occupies and exercises said office, and alleges that he exercises said office by virtue of an appointment thereto by the mayor of Bridgeport, and further alleges the following facts, namely : The said mayor summoned the relator to appear before him on April 30th, 1902, to answer to charges of incompetency and negligence in performing the duties of his office, and particularly to the following charges, to wit : that he had been and still was interested in the compensation paid for stone furnished the city during his term of office by the Williams & Dewhirst Company; that he employed one Dewhirst as assistant and subordinate, who was interested in the compensation so paid for stone furnished by the said Williams & Dewhirst Company, knowing that he was so interested; that he negligently permitted the stone so purchased of the Williams & Dewhirst Company to be furnished the city without having any representative of the city, other than an officer of said company, to supervise the measurement of the stone, and without any method or system by which the quantity of stone so furnished could be accurately determined, and had thereby caused the city to be defrauded and damaged ; that in answer to said summons the relator appeared before the mayor, with counsel, and heard and examined the witnesses who testified in support of the charges, and offered such evidence and arguments as he desired; that on May 19th, 1902, and after said hearing, the mayor found that said charges were true, and that sufficient cause existed for the removal of the relator from office, and did therefore remove the relator from his said office; and that afterwards, and on May 19th, 1902, the mayor appointed the respondent to

fill the vacancy created in the office of director of public works by said removal of the relator.

The replication admits the summons and hearing as alleged in the answer, and also that after said hearing the mayor did assume to remove the relator from office, setting forth his reasons therefor as alleged in the answer, and did assume to appoint the respondent to said office as alleged; and alleges that the removal the mayor thus assumed to make is illegal and void because, first, no evidence was produced on said hearing to legally substantiate the charges, and no legal cause for the relator's removal was in fact shown on said hearing; second, the mayor did not remove the relator for any legal cause whatever, but removed him solely for political reasons; third, said hearing was not a fair and lawful one because the mayor, before and after the hearing, in the absence of the relator, consulted with and was advised and influenced by the attorneys who represented the prosecution of said charges and the persons interested in having the relator removed for political reasons only.

The respondent demurred to this replication and the trial court sustained the demurrer. The relator claims that the court erred in sustaining the demurrer, and this is the only question raised by the appeal.

The charter of the city of Bridgeport as revised in 1895 (12 Special Laws, p. 515) provides, among other things, (§ 32) that "the mayor of the city shall be the chief executive officer thereof, and it shall be his duty to be vigilant and active in causing the laws to be executed and enforced within the city;" and that (§ 11) the common council shall consist of the mayor and twenty aldermen. Various powers and duties are assigned to subordinate executive boards, including the board of public works, of which boards the mayor is a member and chairman, but without the power of voting unless in case of tie. The members of each of these boards are appointed by the mayor (§§ 17, 19) to hold office for a definite term, unless sooner removed for cause. Any member of these boards may be removed by the common council by a two-thirds vote, for cause (§§ 17, 19). It is the duty of

the mayor to fill by appointment any vacancies in offices in all cases in which he is given the power to appoint (§ 32), and to perform all duties imposed upon him by the charter and ordinances of the city, the laws of the State, and of the United States. The general clause applicable to all officers appointed under the charter, limits their respective terms to their removal from office.

It seems evident from the language used, in connection with other provisions of the charter, that this mode of removal does not depend on an exercise of that *quasi*-judicial power to hear and determine official offenses punishable by a forfeiture of office, as in the case of the amotion of a corporate officer by a municipal corporation for some offense which forfeits his right to the office, or the deprivation of an ecclesiastical corporation for a similar offense, or where an administrative board is authorized to punish in this way some misfeasance in office. Removals dependent on the conviction or *quasi*-conviction of some offense are otherwise · provided for. Section 41 of the charter authorizes the common council to enact ordinances relative to the removal or expulsion from office of any officer on account of corruption or misfeasance therein. Section 80, in authorizing the boards of fire and police commissioners to remove a fireman or policeman, specially provides for a hearing had in open session. Section 85, in authorizing the mayor to remove a member of the board of apportionment and taxation, requires a conviction of some corrupt practice.

Although the power of removal may be limited by the necessity of assigning some cause, or of informing the officer removed of the cause of his removal and giving him an opportunity for explanation, and stating the ground of removal, the act belongs rather to the field of executive discretion than to that of *quasi*-judicial finding; and the action of the removing officer complying with the limitation is final. *People ex rel. Keech* v. *Thompson*, 94 N. Y. 451 ; *People ex rel. Gere* v. *Whitlock*, 92 id. 191, 197 ; *State ex rel. Kennedy* v. *McGarry*, 21 Wis. 502, 503 ; *People* v. *Martin*, 19 Col. 565 ; *State ex rel. Attorney-General* v. *Hawkins*, 44 Ohio St. 98, 115·

In 1899 (13 Special Laws, p. 376) the city charter was amended by abolishing the board of public works and giving the powers and duties assigned to that board to the " director of public works," and the amendment provided that this officer should be appointed by the mayor for a term of four years, unless sooner removed by the mayor for cause.

Considering all the provisions of the charter as thus amended, we think the removal of this officer is a mode of exercising this power of removal incident to executive appointment, and that the limitation placed on its exercise is satisfied, possibly more than satisfied, when the mayor has stated to the officer the cause which induces him to contemplate his removal, being a proper and sufficient cause, has given him an opportunity to be heard in relation thereto, and assigns this cause in making the removal.

It follows that the facts alleged in the answer and admitted by the replication establish a valid removal of the relator, and a valid appointment of the respondent. The affirmative allegations of the relator's replication are immaterial and irrelevant, because, if true, they do not alter the fact of the relator's removal from office. *Avery* v. *Studley*, 74 Conn. 272 ; *Hoboken* v. *Gear*, 27 N. J. L. 265, 286–288. An executive removal may be unjust and induced by reprehensible motives, but it is not therefore invalid. The executive discretion, whether in appointment or removal, is absolute. The person abusing that discretion may be punished, but not by judicial reversal of his official action. When the absolute discretion, whether in appointment or removal, is limited by law, while the due observance of those limits may be enforced, yet the action of the executive within the limits prescribed cannot be controlled by the court.

Whether the validity of executive appointment or removal should or could be made to depend upon a prior judicial trial and finding under the rules governing judicial trials, and subject to be reviewed and set aside by the court for errors in the conduct of the trial and upon the absence of any controlling improper motive inducing the executive action—absence of such motive to be determined by the court—

are questions not before us. Such judicial control of executive action has heretofore been deemed inconsistent with the efficient performance of executive duties. The relator's claim seems to assume that the city charter, in authorizing the mayor to appoint a director of public works for a term of four years, or until sooner removed by him for cause, and upon his removal to appoint another to fill the vacancy, requires, as an essential condition precedent to any removal, the existence of a sufficient cause to be judicially found as a fact, and declares a removal, following such cause and assigning the same as its reason, to be void, if in fact the inducing motive is not the existing cause assigned, but a desire to have the office filled by a member of the mayor's own political party; and that the Superior Court, upon proceedings in the nature of *quo warranto*, is made the final judge of the sufficiency of the cause and its existence as a fact, and of the operating motive of the mayor in making the removal.

This assumption is plainly unfounded. The demurrer was properly sustained.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.